T.C. Memo. 2002-101

UNITED STATES TAX COURT

HIEN X. PHAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8004-00.                    Filed April 15, 2002.

Hien X. Pham, pro se.

<u>Michael A. Skeen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes of $58,283 for 1996 and $59,226 for 1997, an addition to tax under section 6651(a)(1) of $14,794.25 for 1997, and accuracy-related penalties under section

6662(a) of $11,656.60 for 1996 and $11,845.20 for 1997.[1]  After concessions, the issues for decision are:

1.  Whether respondent bears the burden of proof under section 7491(a) as to the items of income and deduction disallowed in the notice of deficiency.  We hold that respondent does not.

2.  Whether petitioner had unreported income of $64,108.94 for 1996 and $21,942.75 for 1997.  We hold that he did.

3.  Whether petitioner may deduct miscellaneous expenses related to his Schedule C business of $15,302 for 1996 and $25,746 for 1997.  We hold that he may not.

4.  Whether petitioner is liable for the addition to tax for failure to timely file under section 6651(a)(1) for 1997.  We hold that he is not.

5.  Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1996 and 1997.  We hold that he is.

Section references are to the Internal Revenue Code in effect for the applicable years.  Rule references are to the Tax Court Rules of Practice and Procedure.

---

[1]  After concessions, respondent now contends that petitioner is liable for deficiencies in his Federal income taxes of $27,555 for 1996 and $15,512 for 1997, an addition to tax of $3,865.75 under sec. 6651(a)(1) for 1997, and accuracy-related penalties under sec. 6662(a) of $5,511 for 1996 and $3,102.40 for 1997.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.

A.    Petitioner

Petitioner resided in Orange, California, when he filed the petition.  He is a technician who repairs copy machines.  He operated a copy machine service business known as Copy Care Technology in 1996 and 1997.  He sometimes hired subcontractors to repair copy machines.

B.    Petitioner's Bank Accounts

Petitioner made the following deposits in his bank accounts in 1996 and 1997:

<u>1996</u>

| Bank | Amount deposited |
|------|------------------|
| Wells Fargo | $1,410.57 |
| Wells Fargo (2) | 135,805.44 |
| Bank of America | 56,956.71 |
| Total | 194,172.72 |

<u>1997</u>

| Bank | Amount deposited |
|------|------------------|
| Wells Fargo | $118,031.27 |
| Bank of America | 81,772.02 |
| Total | 199,803.29 |

C.    Petitioner's Income Tax Returns

Petitioner filed his 1996 income tax return on April 15, 1997.  He obtained a 4-month extension of time to file his 1997 return until August 17, 1998.  He filed his 1997 income tax return on August 17, 1998.  He included with each of his 1996 and

1997 returns a Schedule C, Profit or Loss From Business, for Copy Care Technology. He deducted business expenses of $56,500 for 1996 and $97,752 for 1997 on the Schedules C.

D. Respondent's Examination of Petitioner's 1996 and 1997 Returns

Revenue Agent Colleen Warren (Warren) began her examination of petitioner's 1996 and 1997 returns in December 1998, when she met with petitioner at his home. He refused to talk to Warren at that time. Warren then invited petitioner to meet with her at her office. She asked petitioner for copies of his 1996 and 1997 bank statements, invoices, and canceled checks to support his 1996 and 1997 Schedule C expense deductions. Petitioner did not respond to Warren's December 1998 document requests, meet with her, or respond to her telephone calls. She sent petitioner several letters to attempt to schedule a conference. Petitioner did not respond to these letters. Warren also gave petitioner the option of meeting instead with her manager, but petitioner refused.

Petitioner told Warren that he could not understand English. Warren then asked a revenue agent who spoke Vietnamese to contact petitioner. Petitioner asked that agent to contact him at petitioner's mother's home. The agent left a message there for petitioner to telephone the agent. Petitioner did not return the agent's call.

Warren issued summonses to petitioner's banks and obtained petitioner's 1996 and 1997 bank statements.

E.   Respondent's Determination

Warren performed a bank deposits analysis and characterized each of petitioner's 1996 and 1997 deposits as taxable or nontaxable.  She characterized the following as nontaxable: Checks deposited by petitioner with insufficient funds; returned deposits; loans from petitioner's father; a $37.72 check from Air Touch Cellular deposited on April 12, 1996; a $588.32 check from Kelley Escrow deposited on August 7, 1996; a $25 check from AT&T deposited on August 7, 1996; and a $560 redeposit made on August 19, 1997.

Respondent determined that petitioner received unreported income of $118,413 in 1996 and $78,150 in 1997.  Respondent disallowed business expense deductions of $46,500 in 1996 and $87,752 in 1997.

Respondent transferred petitioner's case to Appeals Officer Heidi Peterson (Peterson) in September 2000, after the petition in this case was filed.  In early October 2000, Peterson wrote to petitioner to schedule a conference and to request information and documents that Warren had previously requested.  Shortly before the date Peterson had proposed for the conference, petitioner told Peterson that he did not have the requested

documents. Peterson rescheduled the conference for late November 2000.

Petitioner then retained Mr. Covarrubias (Covarrubias) to represent him in his dealings with respondent. Covarrubias asked Peterson to reschedule the conference for the end of December 2000. Peterson did so. Covarrubias attended that conference and gave Peterson some of petitioner's canceled checks. Covarrubias later gave Peterson a box containing unorganized personal and business invoices and petitioner's credit card statements.

Warren organized petitioner's records. Warren identified the expenses which she thought were deductible. Warren then recomputed petitioner's income and expenses for 1996 and 1997 as follows:

### 1996

| | |
|---|---|
| Nontaxable items, Wells Fargo (2) | $17,284.18 |
| Nontaxable items, Bank of America | 41,767.28 |
| Returned deposits, Bank of America | 8,613.32 |
| Gross receipts per return | 62,399.00 |
| Unreported income | 64,108.94 |
| Total deposits for 1996 | 194,172.72 |

### 1997

| | |
|---|---|
| Nontaxable items, Wells Fargo | $560.00 |
| Nontaxable items, Bank of America | 65,232.54 |
| Gross receipts per return | 112,068.00 |
| Unreported income | 21,942.75 |
| Total deposits for 1997 | 199,803.29 |

Warren concluded that petitioner had allowable Schedule C business expenses of $39,439 for 1996 and $65,494 for 1997.[2]

OPINION

A.   Whether Respondent Bears the Burden of Proof as to Items of Income and Deduction

Petitioner contends that respondent bears the burden of proof under section 7491(a) as to the items of income and deduction disallowed in the notice of deficiency.   We disagree.

The Commissioner bears the burden of proof under section 7491(a)[3] if the taxpayer has:   (1) Complied with substantiation

---

[2]   Shortly before trial respondent allowed additional deductions for Schedule C business expenses of $1,759 for 1996 and $6,512 for 1997.

[3]   Sec. 7491 provides in pertinent part:

SEC. 7491. BURDEN OF PROOF.

(a) Burden Shifts Where Taxpayer Produces Credible Evidence.--

(1) General rule.--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all
(continued...)

requirements under the Internal Revenue Code, sec. 7491(a)(2)(A); (2) maintained all records required by the Internal Revenue Code, sec. 7491(a)(2)(B); (3) cooperated with reasonable requests by the Secretary for information, documents, and meetings, id.; and (4) introduced at trial credible evidence with respect to any factual issue relevant to ascertaining his or her liability for any tax imposed under subtitle A or B, sec. 7491(a)(1).[4]

Petitioner did not substantiate his deductions, keep records of his income and expenses, or cooperate with respondent's agents. Thus, petitioner bears the burden of proving that respondent's determination is incorrect as to the items of income and deduction disallowed in the notice of deficiency. Sec. 7491(a); Rule 142(a)(2).

B. Whether Petitioner Had Unreported Income

Respondent contends respondent's bank deposits analysis shows that petitioner had unreported income of $64,108.94 in 1996 and $21,942.75 in 1997. Petitioner does not dispute respondent's

---

[3](...continued)
records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; * * *.

[4] Sec. 7491 applies to court proceedings arising in connection with examinations beginning after July 22, 1998. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. The examination in this case began after July 22, 1998. Thus, sec. 7491 applies.

use of the bank deposits method to reconstruct his income for 1996 and 1997.

Petitioner contends that he had the following nontaxable sources of income:  Loans from his friends, brothers, or sister of $1,600 on March 5, 1996, $4,500 on April 24, 1997, $3,800 on June 18, 1997, $3,000 on June 20, 1997, and $3,000 on July 1, 1997.[5]  We disagree.

Petitioner has no promissory notes or records showing that these amounts were loans or that he repaid them.  He did not identify specific individuals who lent him these amounts. Petitioner's testimony that these deposits were loans was vague and uncorroborated.  We are not convinced that the source of any of the bank deposits respondent counted as unreported income for petitioner in 1996 and 1997 was a nontaxable loan.  We conclude that petitioner had unreported income of $64,108.94 in 1996 and $21,942.75 in 1997.

C.  <u>Whether Petitioner May Deduct More Business Expenses Than Respondent Allowed for 1996 and 1997</u>

Petitioner deducted more miscellaneous expenses related to his Schedule C business than respondent allowed for 1996 and

_____

[5]  Petitioner's contention on brief differs slightly from his contention at trial.  On brief, he contended that deposits in his bank accounts "that are large and end in '000', such as $1,000.00, $3,000.00, and $5,000.00, are loan funds I received from my family and friends."  At trial, he contended that bank deposits of $1,000 or more were funds which were lent to him by friends and family and then identified the five specific deposits (shown above) as loans.  He did not show that any of the deposits respondent used to determine unreported income were loans.

1997.  Respondent disallowed deductions of $15,302 for 1996 and $25,746 for 1997 because petitioner did not substantiate them.

Petitioner contends that he paid $15,302 in 1996 and $25,746 in 1997 to hire a receptionist and a repair technician to fix copy machines for him.  However, petitioner offered no evidence other than his testimony, which was vague and uncorroborated. Petitioner did not identify the receptionist or the repair technician or indicate when they worked for him or when he made the payments.

We conclude that petitioner may not deduct more miscellaneous expenses related to his Schedule C business than respondent allowed for 1996 and 1997.

D.   Whether Petitioner Is Liable for the Addition to Tax for Failure To Timely File His 1997 Income Tax Return

Respondent contends that petitioner is liable for the addition to tax under section 6651(a) for failure to timely file his income tax return for 1997.  Petitioner received an automatic 4-month extension to file his 1997 income tax return until August 17, 1998.  Petitioner filed his 1997 return on August 17, 1998.  Thus, petitioner timely filed his 1997 return.  Sec. 6651(a)(1).

Respondent alleges that petitioner's extension to file is invalid because petitioner did not properly estimate his tax liability for 1997 or remit the estimated tax when he applied for the extension.  The Commissioner bears the burden of production

with respect to penalties and additions to tax. Sec. 7491(c). To meet the burden of production under section 7491(c), the Commissioner must come forward with evidence showing that it is appropriate to impose the particular penalty but need not introduce evidence of elements such as reasonable cause or substantial authority. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995. The request for an extension is not in the record, and, thus, we cannot tell how much tax petitioner estimated was due. There is no evidence to support respondent's allegation that petitioner's extension is invalid, or that petitioner did not properly estimate the amount of tax due and remit the estimated tax with the extension request. We conclude that respondent has failed to meet the burden of production under section 7491(c), that petitioner's extension is valid, and that he is not liable for the addition to tax for failure to timely file his 1997 income tax return.

E.  Whether Petitioner Is Liable for the Accuracy-Related Penalty

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence includes failure to make a reasonable attempt to comply with internal revenue laws or to exercise ordinary and reasonable care in preparing a tax return. Sec. 6662(c).

Petitioner alleged nontaxable sources of income of $1,600 for 1996 and $14,300 for 1997, but he did not dispute that he had a substantial amount of unreported income in those years; in effect, petitioner conceded that he had unreported income of $62,508 for 1996 and $7,642 for 1997. In addition, petitioner did not produce to respondent's agent during the audit adequate substantiation of the items in dispute. A taxpayer's failure to properly substantiate items is evidence of negligence. See sec. 6662(c); Higbee v. Commissioner, supra at 449; sec. 1.6662-3(b)(1), Income Tax Regs. These facts are sufficient to meet respondent's burden of production under section 7491(c) relating to petitioner's liability for the accuracy-related penalty.

The accuracy-related penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part of the underpayment, and that the taxpayer acted in good faith in view of the facts and circumstances. Sec. 6664(c)(1). The taxpayer bears the burden of proving that the failure is due to reasonable cause and not willful neglect. Higbee v. Commissioner, supra at 446. Petitioner contends that he is not liable for the accuracy-related penalty. However, he offered no evidence to support his contention. Petitioner suggests that he and Warren had a bad

working relationship, but he did not explain how this is relevant to whether he is liable for the accuracy-related penalty for the years in issue.

We conclude that petitioner is liable for the accuracy-related penalty under section 6662(a) for 1996 and 1997.

To reflect concessions and the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.